1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   UNITED STATES of AMERICA,

4           -against-                          20cr125
                                               Plea
5
    JOHN CICERO,
6
                          Defendant.
7
    ------------------------------------x
8
                                    United States Courthouse
9                                   White Plains, New York

10                                  October 13, 2021

11

12

13  B e f o r e:

14          THE HONORABLE ANDREW E. KRAUSE,
                 United States Magistrate Judge
15

16

17

18  A P P E A R A N C E S:

19

    DAMIAN WILLIAMS
20       United States Attorney for
         the Southern District of New York
21  BY:  DAVID R. FELTON
         Assistant United States Attorney
22

23  MURPHY & McGONIGLE P.C.
             Attorneys for Defendant
24  BY:  STEVEN D. FELDMAN

25

                    PAMELA GRIMALDI, CRR, CLR
                         914.390.4053

1          THE DEPUTY CLERK:  This is the matter of U.S. v.

2     Cicero, 20cr125, the Honorable Andrew Krause presiding.

3          Counsel, please note your appearance for the record

4     starting with the government.

5          MR. FELTON:  Good afternoon, your Honor.  David

6     Felton for the government.  With me is Detective Daniel

7     McKenna, formerly of the FBI and now Westchester County DA's

8     office.

9          THE COURT:  Good afternoon, Mr. Felton.

10          Good afternoon, Mr. McKenna.

11          MR. FELDMAN:  Hello, Judge Krause.  Steven Feldman

12     from Murphy & McGonigle, CJA panel on behalf of Mr. Cicero.

13     And I'm joined by Mr. Cicero today.

14          THE COURT:  Good afternoon, Mr. Feldman.

15          Good afternoon, Mr. Cicero.

16          THE DEFENDANT:  Good afternoon, your Honor.

17          THE COURT:  Please be seated.

18          And just make sure to put your mask up, would you,

19     please.

20          And good afternoon, Ms. Grimaldi.  How are you?

21          THE COURT REPORTER:  Good.

22          THE COURT:  Ms. Brown, can I just have the marked-up

23     copy of the plea agreement that's next to you?

24          Okay.  Mr. Cicero, I wanted to advise you that

25     today's proceeding is not a trial.  It is my understanding that

1    you have decided to enter a guilty plea in this proceeding.

2    This proceeding is for the purposes of ensuring that you are

3    aware of your rights in connection with your plea and that any

4    waiver of those rights is knowing and voluntary prior to

5    entering your guilty plea.

6              If at any time you don't hear or understand what I

7    say to you, please interrupt me so that I can repeat and

8    explain what I've said.  If you want to confer with your

9    attorney at any time during the proceeding today, including

10   regarding any particular question that I've asked or any

11   particular thing that I have mentioned, please let me know so

12   we can make arrangements for you to do that.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Very good.

16             I want to advise you that you do have the right to be

17   represented by counsel throughout the entire case, and you may

18   consult with Mr. Feldman at any stage of this proceeding.  You

19   also have the right to remain silent.  Any statement that you

20   do make may be used against you.  You have this right to remain

21   silent even if you have already made statements to law

22   enforcement officers.

23             Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Ms. Brown, will you please place

1    Mr. Cicero under oath or affirmation.

2    JOHN CICERO, having been duly sworn, testified as follows:

3              THE COURT:  Thank you, Ms. Brown.

4              Mr. Cicero, it is important for you to understand

5    that if you knowingly make a false statement during these

6    proceedings, you could be subject to prosecution for the crime

7    of perjury or for making a false statement to the Court, and

8    you could face a punishment up to five years' imprisonment and

9    a $250,000 fine for committing that crime.  That punishment

10   would be separate and apart from any sentence that you may be

11   facing on the crime charged in the felony indictment that we

12   are here on today.

13             Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Mr. Cicero, would you please state your

16   full name for the record.

17             THE DEFENDANT:  John William Cicero.

18             THE COURT:  How old are you, Mr. Cicero?

19             THE DEFENDANT:  39 years old.

20             THE COURT:  Are you a United States citizen?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And are you a citizen by birth or a

23   naturalized citizen?

24             THE DEFENDANT:  By birth.

25             THE COURT:  Are you a citizen of any other country

1  other than the United States?

2              THE DEFENDANT:  No.

3              THE COURT:  How far did you go in formal school?

4              THE DEFENDANT:  Three years.

5              THE COURT:  Three years --

6              THE DEFENDANT:  Of college.

7              THE COURT:  Three years of college.

8         Have you taken any mind-altering drugs, medicine, or

9  pills, or consumed any alcohol in the last 24 hours?

10             THE DEFENDANT:  No.

11             THE COURT:  Is your mind clear here today,

12 Mr. Cicero?  Do you understand what's happening here at this

13 proceeding?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Mr. Felton, does the government have any

16 objection or concern with Mr. Cicero's ability to proceed at

17 this time?

18             MR. FELTON:  No, your Honor.

19             THE COURT:  Thank you.

20        And Mr. Feldman, do you have any concern or objection

21 with respect to your client's ability to proceed?

22             MR. FELDMAN:  No, your Honor.

23             THE COURT:  Mr. Cicero, this proceeding is called a

24 plea allocution.  I want you to understand that you have an

25 absolute right to have this plea allocution conducted before a

1  United States District Judge.  It is the district judge, in

2  this case Judge Karas, who will impose a sentence in this case.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  I am a United States Magistrate Judge.

6  If you consent, then I will conduct the plea allocution and I

7  will then make a report to Judge Karas in which I will

8  recommend whether or not he should accept your guilty plea.  I

9  will make that recommendation based on the information that is

10 brought out during today's proceedings.  It is important for

11 you to understand that the Court will not accept your plea

12 unless the Court is satisfied that you fully understand all of

13 your rights and that you are, in fact, guilty.

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Okay.  I have before me a form that is

17 labeled Consent to Proceed Before a United States Magistrate

18 Judge on a Felony Plea Allocution.  The form is dated today,

19 October 13, 2021.  It is signed by Mr. Feldman and by you,

20 Mr. Cicero.  What the form says, in sum and substance, is that

21 you -- understanding that you have the right to have this plea

22 taken by a United States District Judge, that you agree to have

23 the plea taken by me, a United States Magistrate Judge,

24 instead.

25             First of all, Mr. Feldman, did you, in fact, sign

1    this form earlier today?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  And Mr. Cicero, did you sign it as well?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Mr. Feldman, you signed it too?

6              MR. FELDMAN:  I did, your Honor.

7              THE COURT:  Mr. Cicero answered for both you and

8    Mr. Feldman.  But that's fine.

9              Mr. Cicero, before you signed the form, did you have

10   an opportunity to discuss the contents of the form with

11   Mr. Feldman?

12             THE DEFENDANT:  Yes, I did, your Honor.

13             THE COURT:  All right.  And did anyone threaten or

14   coerce you or promise you anything in order to get you to sign

15   the consent form?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  Did you sign the form freely and

18   voluntarily?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Mr. Felton, do you know of any reason why

21   the waiver and consent to proceed with the plea allocution

22   before a United States Magistrate Judge should not be accepted?

23             MR. FELTON:  I do not, your Honor.

24             THE COURT:  Thank you.

25             And Mr. Feldman, do you know of any reason why the

1   waiver and consent form should not be accepted?

2                MR. FELDMAN:  I do not, your Honor.

3                THE COURT:  Thank you.

4           I find that Mr. Cicero is fully competent and

5   understands the proceedings before him.  I also find that

6   Mr. Cicero is capable of waiving his right to appear before a

7   United States District Judge in order to enter his guilty plea,

8   and I therefore accept the consent form which has been signed

9   and is now part of the record.  The consent form is marked as a

10  court exhibit and will remain in the file.

11               (Court Exhibit 1 was marked)

12               THE COURT:  Mr. Cicero, I have been informed that you

13  wish to change your plea and to enter a plea of guilty as to

14  certain charges.  Is that correct?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  Before deciding whether to accept your

17  guilty plea, I am going to ask you a series of questions.  It's

18  very important that you answer these questions honestly and

19  completely.  The purpose of these questions is to make sure you

20  understand your rights, to decide whether you are pleading

21  guilty of your own free will, and to make sure that you're

22  pleading guilty because you are, in fact, guilty and not for

23  some other reason.

24               Do you understand that?

25               THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Mr. Cicero, if do you not understand any

2    of the questions or you wanted any time to discuss them with

3    Mr. Feldman, please say so, because it is important that you

4    understand every question before you answer them.  Okay?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Now, I have before me an indictment which

7    charges you and others with participation in a narcotics

8    conspiracy in violation of Title 21 United States Code § 846.

9    Mr. Cicero, have you received a copy of the indictment?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And have you had an opportunity to read

12    it?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand what it says?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Would you like me to read the indictment

17    to you here in open court?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Have you had time, Mr. Cicero, to speak

20    with Mr. Feldman about the charges and about how you wish to

21    plead?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Have you discussed the charges against

24    you and has he told you the consequences of pleading guilty?

25          THE DEFENDANT:  Yes, your Honor.

1           THE COURT:  Mr. Cicero, are you satisfied with

2    Mr. Feldman's representation of you up until this point?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  And have you told Mr. Feldman everything

5    you know about this case?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Now, I have before me a plea agreement

8    which is dated September 21, 2001.  It is a seven-page document

9    signed by Mr. Felton, as well as by Jason Swergold, the deputy

10   chief of the White Plains division of the United States

11   attorney's office.  It is also signed by Mr. Feldman and by

12   you, Mr. Cicero, with today's date, October 13, 2021.

13          Mr. Felton, is this the correct copy of the plea

14   agreement?

15          MR. FELTON:  Yes, your Honor.

16          THE COURT:  And Mr. Feldman, do you concur?

17          MR. FELDMAN:  I do, your Honor.

18          THE COURT:  Very good.

19          All right.  Mr. Cicero, have you had an opportunity

20   to read the entire plea agreement which is dated September 21,

21   2021?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Have you reviewed each and every element

24   of the plea agreement with your attorney?

25          THE DEFENDANT:  Yes, your Honor.

1              THE COURT:  And did you, in fact, sign the plea

2     agreement earlier today?

3              THE DEFENDANT:  Yes, I did, your Honor.

4              THE COURT:  Mr. Feldman, did you review each and

5     every part of the plea agreement with Mr. Cicero?

6              THE DEFENDANT:  I did, your Honor.

7              THE COURT:  And Mr. Cicero, are you satisfied that

8     you understand the entire plea agreement which Mr. Feldman has

9     reviewed with you?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you have any questions at this point

12    either for Mr. Feldman or for me about what the plea agreement

13    says?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  Does the plea agreement contain the

16    complete agreement between you and the government in connection

17    with this case?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand, Mr. Cicero, that

20    anything that is not set forth in the plea agreement or which

21    is not told to me at this time on the record will not be

22    binding on the outcome of your case?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Mr. Felton, is there anything beyond the

25    written plea agreement that the Court should be aware of?

1          MR. FELTON:  No, your Honor.

2          THE COURT:  Mr. Feldman, is there any other agreement

3    that the Court should know about?

4          MR. FELDMAN:  No, your Honor.

5          THE COURT:  Thank you, both.

6          Mr. Cicero, did you sign the plea agreement freely

7    and voluntarily?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Did anyone force you or coerce you or

10   threaten you or promise you anything other than what is set

11   forth in the written plea agreement in order to get you to sign

12   the plea agreement?

13         THE DEFENDANT:  No, your Honor.

14         THE COURT:  At various points in the next few minutes

15   I'll be reading from portions of the plea agreement just so we

16   can review them in a bit more detail.

17         Mr. Cicero, if you are convicted of the charge

18   contained in the felony indictment, either after trial or by

19   plea of guilty, you would be subject to -- let me put it this

20   way:  The charge itself, the narcotics conspiracy charge,

21   carries with it -- let me withdraw that for a second.

22         Just to be clear, as set forth in the first paragraph

23   of the plea agreement, the plea here today is to a lesser

24   included offense within the confines of the indictment.

25         Is that correct, Mr. Felton?

1            MR. FELTON:  Yes, your Honor.

2            THE COURT:  So I'm going to refer to the potential

3    term of imprisonment based on the lesser included offense at

4    this point, unless anybody has any objection to that.

5            Mr. Felton?

6            MR. FELTON:  No, your Honor.  That's fine.

7            THE COURT:  Mr. Feldman?

8            MR. FELDMAN:  No, your Honor, no objection.

9            THE COURT:  So Mr. Cicero, under the terms of the

10   plea agreement, the government is accepting a guilty plea to

11   the lesser included offense of conspiring to distribute 50

12   grams and more of mixtures and substances containing a

13   detectable amount of methamphetamine, its salts, isomers, and

14   salts of its isomers in violation of Title 21 U.S. Code § 846

15   and 841(b)(1)(B), and that offense carries a maximum term of

16   imprisonment of 40 years, a mandatory minimum term of

17   imprisonment of five years, a maximum term of supervised

18   release of life, a mandatory minimum term of supervised release

19   of four years, a maximum fine pursuant to Title 18 U.S. Code §

20   3571 and Title 21 U.S. Code § 841(b)(1)(B) of the greatest of

21   $5 million, twice the gross pecuniary gain derived from the

22   offense, or twice the gross pecuniary loss to persons other

23   than yourself resulting from the offense, as well as a $100

24   mandatory special assessment.

25            Mr. Cicero, if you are sentenced to a term of

1    imprisonment, even if you are also sentenced to the maximum

2    term of imprisonment, if you are then sentenced to a term of

3    supervised release, if you violate the conditions of supervised

4    release, you could be sentenced to an additional term of

5    imprisonment for violating the conditions of your supervised

6    release, which in this case would be an additional term of up

7    to three years.

8            In addition, as set forth on page 2 of the plea

9    agreement, you have -- as part of the plea agreement you are

10   admitting the forfeiture allegation with respect to Count One

11   of the indictment, and you are agreeing to forfeit to the

12   United States, pursuant to Title 21 U.S. Code § 853, any and

13   all property constituting or derived from any proceeds obtained

14   directly or indirectly or intended to be used in any manner or

15   part to commit or facilitate the commission of the offense

16   charged in the indictment, including but not limited to a sum

17   of money in United States currency representing the amount of

18   proceeds traceable to the commission of the offense set forth

19   in the indictment.

20           It is further your understanding that any forfeiture

21   of assets will not be treated as satisfaction of any fine,

22   restitution, or any other punishment the Court may impose upon

23   you in addition to the forfeiture.

24           Mr. Felton, is there any particular specification

25   with respect to potential restitution in this matter?

1          MR. FELTON:  Your Honor, there is no restitution in

2   this case and the amount of forfeiture has not been determined

3   yet, but it will align with the conditions set forth in the

4   plea agreement that your Honor just read.

5          THE COURT:  Very good.  Thank you, Mr. Felton.

6          Mr. Cicero, do you understand that these are the

7   possible sentences that could be imposed following your guilty

8   plea in this case?

9          THE DEFENDANT:  Yes, I do, your Honor.

10          THE COURT:  Do you also understand that you are

11   pleading guilty to a felony offense and that this adjudication

12   may deprive you certain valuable civil rights which may include

13   the right to vote, the right to hold public office, the right

14   to serve on a jury, the right to possess any type of firearm,

15   including rifles and shotguns, the right to be considered for

16   certain types of employment, or to be bonded, or to serve in

17   the United States military, and the right to possess or obtain

18   certain government-issued licenses, including licenses that may

19   be required in certain professions and occupations?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  I will further advise you that many of

22   the civil rights I just described, including the right to vote,

23   are controlled by state law, so the specific consequences of a

24   felony conviction will vary from state to state.

25          One effect of a plea of guilty to a narcotics-related

1  offense such as this one is that you may be ineligible for

2  certain federal and federally funded benefits that you would

3  otherwise have been eligible for, including but not limited to

4  Social Security, food stamp benefits, education loans or

5  grants, and public housing or housing subsidies.

6            Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Do you understand that this consequence

9  may be for a limited period of time or it may be a permanent

10  barrier to your obtaining these benefits, depending on the

11  crime of conviction and your prior criminal record?

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  Okay.  Mr. Cicero, do you understand that

14  these are the possible legal consequences of a guilty plea?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Do you understand, Mr. Cicero, that the

17  United States Sentencing Commission has issued guidelines for

18  judges to follow in determining the appropriate sentence in a

19  criminal case?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Do you also understanding that the

22  sentencing guidelines are not mandatory, but that they must be

23  considered by the Court along with other factors listed at

24  Title 18 U.S. Code § 3553 when the judge determines the

25  appropriate sentence to impose, including possible departures

1    from the guidelines?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  Have you and Mr. Feldman talked about

4    how the sentencing guidelines will be calculated in your case?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  The plea agreement in this case sets

7    forth a stipulated sentencing range of 168 to 210 months and a

8    stipulated fine range of between $40,000 and $5 million.  Do

9    you understand that this is simply an understanding between you

10   and Mr. Feldman and Mr. Felton and that it is not binding on

11   Judge Karas when he imposes sentence in this case?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  Do you understand that Judge Karas will

14   consider the guidelines but will impose a sentence in

15   accordance with the statute, which in this case means that the

16   prison term will not be more than 40 years and will not be less

17   than five years?

18               THE DEFENDANT:  Yes, your Honor.

19               THE COURT:  Do you also understand that the Court

20   will not be able to determine the appropriate sentence until

21   after the presentence report has been prepared and until you

22   and Mr. Feldman, as well as the government, have had an

23   opportunity to challenge the facts reported in the presentence

24   report and the calculation of the sentencing guideline range

25   and any sentence recommendation in that report?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you also understand that if there are

3     any objections to the presentence report, that those objections

4     will be ruled on by the Court and, if necessary, a hearing will

5     be held to determine what information is relevant to the

6     Court's determination of the sentence?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  As part of the plea

9     agreement, Mr. Cicero, you have agreed to waive certain

10    appellate rights, and I want to make sure that you understand

11    that specifically, and I'll go through those with you here.

12         Do you have a copy of the plea agreement in front of

13    you?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  All right.  I'm going to look at the

16    bottom of page 4, in particular, to review these appellate

17    waivers with you.

18         Specifically, you have agreed, as part of the plea

19    agreement, that you will not file a direct appeal or bring a

20    collateral challenge, including but not limited to any

21    application under Title 28 U.S. Code § 2255 or 2241 of any

22    sentence within or below the stipulated guidelines range of 168

23    to 210 months in prison.

24         Turning to the top of page 5, you further have agreed

25    not to appeal or bring a collateral challenge of any term of

supervised release that is less than or equal to the statutory

maximum, and you have agreed not to appeal or bring a

collateral challenge of any fine that is less than or equal to

$5 million.  You have also agreed not to appeal or bring a

collateral challenge of any special assessment that is less

than or equal to $100.

That said, the plea agreement specifies that none of

these waivers shall be construed to be a waiver of whatever

rights you may have to assert claims of ineffective assistance

of counsel.

In addition to the plea agreement, you have agreed to

waive any and all right to withdraw your plea or to attack your

conviction, either on direct appeal or collaterally, on the

ground that the government has failed to produce any discovery

material, Jencks Act material, exculpatory material pursuant to

*Brady v. Maryland* other than information establishing your

factual innocence, or impeachment material pursuant to *Giglio*

*v. United States* that has not already been produced as of the

date this agreement was signed, which was today, October 13,

2021.

Do you understand that, Mr. Cicero?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Cicero, do you understand that if you

disagree with the Court's sentencing decision, that that will

not give you the basis for withdrawing your guilty plea?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you also understand that parole has

3    been abolished in the federal system, and if you are sentenced

4    to a term of imprisonment, you will not be eligible for early

5    release on parole?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you understand that you do not have to

8    plead guilty?  You have an absolute right to continue in your

9    plea of not guilty and to have your matter go to trial either

10   before a judge or a jury?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that if you continue in

13   your plea of not guilty, you are entitled to have a speedy and

14   public trial of your case?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand that at any trial of

17   this matter, if there were to be a trial, you would be entitled

18   to a presumption of innocence, and that the presumption would

19   remain with you until the government proves each and every

20   element of the crimes charged beyond a reasonable doubt to the

21   satisfaction of a judge, if it is a judge trial, or to the

22   unanimous satisfaction of the jury, if it is a jury trial?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  If there were a trial, Mr. Cicero, you

25   would have the right, with the assistance of your attorney, to

1    confront and cross-examine the witnesses against you.  You

2    would have the right to call witnesses to testify for you and

3    to have subpoenas issued to compel witnesses to give testimony.

4    You would also have the right to testify at your trial, but you

5    could not be forced to testify.  If you decided not to testify,

6    your decision to remain silent could not be held against you in

7    any way.

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  At your trial, if there were a trial, you

10   would also have the right to the assistance of an attorney and

11   to have an attorney appointed to represent you if you could not

12   afford counsel.

13            Do you understand, Mr. Cicero, that if you plead

14   guilty to the charge in the felony indictment, that you would

15   give up your right to a trial, and except for the right to

16   counsel, you would also give up all the other rights which I

17   have explained to you here?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Mr. Cicero, have you clearly heard and

20   understood everything I've said to you here today?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  Do you have any questions for me or for

23   Mr. Feldman about anything I've said or about anything I've

24   asked you?

25            THE DEFENDANT:  No, your Honor.

1            THE COURT:  Okay.  Thank you, Mr. Cicero.

2            Mr. Felton, turning to you, what are the elements of

3    the offense here and what is the government prepared to prove

4    at trial in order to establish those elements?

5            MR. FELTON:  Yes, your Honor.

6            The elements are, first, two or more persons agreed

7    to violate the federal drug laws; second, the defendant

8    knowingly and voluntarily entered into the conspiracy; and

9    third, the objective of the conspiracy was to distribute 50

10   grams and more of mixtures and substances containing a

11   detectable amount of methamphetamine, its salts, isomers, and

12   salts of its isomers, and mixtures and substances containing a

13   detectable amount of GBL.  The government would also need to

14   prove by a preponderance of the evidence that venue was

15   appropriate in the Southern District of New York.  Here,

16   narcotics transactions were carried out by the defendant in

17   Manhattan and Bronxville, and acts in furtherance of the

18   conspiracy occurred in Bronxville and Manhattan, including

19   narcotics transactions, narcotics storage, and calls arranging

20   narcotics transactions.

21           If this case were to proceed to trial, the government

22   would expect to present the following evidence, among other

23   things:  Recorded New York State prison calls in which the

24   defendant and codefendant Irma Materasso arranged GBL and

25   methamphetamine transactions, including Cicero supplying

codefendant Marco Caso with GBL and receiving methamphetamines
from Caso.  Government would also expect to introduce line
sheets and recordings made pursuant to judicially authorized
wiretaps of Caso's phone where the defendant discussed
narcotics trafficking with Caso, including pricing, payment,
drug sales, and arranging meetings in hotel rooms.  For
instance, on February 5, 2020 the defendant called Caso.
Cicero told Caso to order $10,000 worth of product for him and
he will settle the bill with one call.  Caso told Cicero he
will get it for him, no problem.

         The government would further expect to introduce
January 30, 2020 FBI physical surveillance of an in-person
methamphetamine transaction between the defendant and Caso in a
white van as arranged by Materasso, Cicero, and Caso over the
Caso wiretaps.  That day before the meeting, over an
intercepted call, Caso told Cicero, I am locked and loaded.

         The government would also expect to introduce an
audio-video recording of a December 3, 2019 controlled buy of a
cooperating witness from Caso where, during the transaction,
Caso and the cooperating witness discussed Cicero as a source
of GBL.  Caso said, I think he just got a shipment, but I
ordered some -- I ordered a lot from him.  Caso explained that
the defendant is a large-scale GBL supplier who buys GBL in
$5,000 to $10,000 quantities at a time through the mail.

         The government also would expect to introduce U.S.

customs and border protection seizure reports relating to

seized GBL from China sent to the attention of John Cicero of

Bronxville, New York.  The government also would expect to

introduce an extraction of the defendant's cell phone

containing images of and communications regarding narcotics and

payment for narcotics with numerous Western Union receipts from

the defendant to China and Mexico, including direct

communication with the Mexico-based source of methamphetamine

saved in the defendant's phone as Maria Mexico.

The government also would expect to introduce the

following items recovered from searches of premises controlled

by Cicero as part of his arrest:  GBL, methamphetamine, and a

drug scale were recovered from Cicero's hotel room; GBL was

recovered from Cicero's storage unit in Manhattan; and GBL,

three drug scales with residue, and drug packaging were

recovered from his parents' residence, and drug ledgers

reflecting the trafficking of large quantities of narcotics for

thousands of dollars.

The government would further expect to present phone

records indicating that Mr. John Cicero is listed as the

subscriber for a telephone number the defendant used to broker

narcotics transactions with Caso over the Caso wiretap.  The

government would also expect to present seized narcotics and

audio-video footage from nine audio-video recorded controlled

purchases of methamphetamine, and two audio-video recorded

1    purchases of GBL, all from codefendant Caso.  Over the course

2    of these purchases, Caso sold approximately 2,000 grams of

3    methamphetamine and approximately 3.5 liters of GBL to a

4    cooperating witness.

5            The government would further expect to present

6    recorded calls and communications arranging the controlled

7    purchases, lab reports and related expert testimony, law

8    enforcement and cooperating witness testimony, surveillance by

9    law enforcement including photographs of coconspirators

10   engaging in narcotics transactions, prison calls of

11   coconspirators arranging narcotics transactions, Western Union

12   subpoena returns, and toll records and phone location

13   information, all of which would establish beyond a reasonable

14   doubt that the defendant conspired with others to distribute at

15   least 50 grams and more of mixtures and substances containing a

16   detectable amount of methamphetamine, its salts, isomers, and

17   salts of its isomer, and mixtures and substances containing a

18   detectable amount of GBL from in or about 2017 up to and

19   including February 2020 in, among other places, Bronxville and

20   Manhattan.

21           THE COURT:  Okay.  Thank you, Mr. Felton.

22           I just want to clarify one thing.  You referred

23   throughout that recitation to both the sale and distribution of

24   methamphetamine and the sale and distribution of GBL, which is

25   perfectly consistent with what I asked you because I asked you

1    about the elements of the offense charged in the indictment and

2    what the government would be prepared to prove at trial if the

3    plea for whatever reason did not go forward.  So you did

4    exactly what I asked you to do.

5            But just to be clear, because Mr. Cicero is pleading

6    guilty here to the lesser included offense that really, as set

7    forth in the plea agreement, only pertains to methamphetamine.

8    It's my understanding that in terms of an allocution, we're

9    only expecting to hear from Mr. Cicero with respect to the

10   methamphetamine component of the charge.  Unless I'm mistaken.

11   I just want to understand that before I turn to Mr. Cicero.

12           MR. FELTON:  Your Honor, because -- the way the

13   government understands the first paragraph of the plea

14   agreement is that because the GBL object of the conspiracy was

15   always a (b)(1)(C) count, that is part of the plea that is --

16   that is -- in the lesser included offense.  That is to say that

17   while it is a (b)(1)(B) methamphetamine count, it is also a

18   (b)(1)(C) GBL count.

19           THE COURT:  Okay.  Mr. Feldman, do you have any

20   objection to that or different understanding of it?

21           MR. FELDMAN:  I do, your Honor.  Mr. Cicero is

22   prepared to make an allocution about a conspiracy to distribute

23   50 grams and more of a mixture and substance containing a

24   detectable amount of methamphetamine.

25           THE COURT:  Okay.  Mr. Felton, that is what it says

1    here.  I mean, it says, The government will accept a guilty

2    plea to the lesser included offense of conspiring to distribute

3    50 grams and more of mixtures and substances containing a

4    detectable amount of methamphetamine, its salts, isomers, and

5    salts of its isomers, in violation of U.S. Code 846 and

6    841(b)(1)(B), and then it goes on to recite the penalties

7    associated with that.

8            I mean, I understand in theory that the GBL charge is

9    an 841(b)(1)(C) charge, but what the plea agreement says on its

10   face is that the offense for which Mr. Cicero is pleading

11   guilty is an 846 (b)(1)(B) charge pertaining to

12   methamphetamine.

13           MR. FELTON:  Yes.  Your Honor, that's understood.

14   And perhaps the drafting could have been clearer on the

15   government's part.  The government would point out that under

16   the offense level on page 2(a)(3), the drug weight, which

17   drives the guidelines, are driven, you know, in large part by

18   the GBL quantity weight, as well, here.  So paragraph (a)(3)

19   notes that the defendant is stipulating to that the offense

20   involved 750,000 milliliters of GBL, and that accounts for the

21   Level 34 drug weight as well.  And also in the immunity

22   paragraph on page 1, the government notes that the conspiracy

23   relates -- is a conspiracy to distribute methamphetamine and

24   GBL on the bottom of page 1.

25           So for those reasons, the government believes that

1   the GBL is encompassed in the defendant's guilty plea.  And

2   he's stipulating to a drug weight that is based, in part, on

3   the weight of GBL traffic as well.

4           THE COURT:  Okay.  Thank you, Mr. Felton.

5           Mr. Feldman, there are various references in the plea

6   agreement, other than the section that I've just read -- as

7   Mr. Felton points out, there are various references to GBL and

8   to the quantity of GBL being a substantial factor in the

9   guidelines calculation.

10          MR. FELDMAN:  Yes, your Honor.  We're stipulating to

11  the guidelines calculation.  We're not disputing that that's

12  not relevant conduct or anything like that.  So that's --

13  certainly the GBL is relevant conduct for purposes of

14  Mr. Cicero's sentencing, and we're not going to dispute that, I

15  do not believe.  That's what we're pleading to in signing this

16  plea agreement.  So those numbers all attach.  But in terms of

17  what he needs to plead to today and what we've prepared an

18  allocution for, and he's prepared an allocution for, as you

19  read the plea agreement, 50 grams and more of a mixture and

20  substance of methamphetamine.

21          THE COURT:  Okay.  Well, let me ask you this:  I

22  mean, there's obviously some dispute or disagreement as to what

23  the scope of the allocution should be, and it would be helpful

24  if there could be an agreement as to what the scope of the

25  allocution should be.  But if there isn't, we can go forward

1  based on what my understanding is.  It's just it would be

2  unfortunate if we get to a point several months from now when

3  Mr. Cicero is to be sentenced before Judge Karas and this turns

4  out to be a problem.  So I'm going to just take a five-minute

5  recess and allow you, Mr. Felton, and you, Mr. Feldman, to

6  discuss this further and see if you have a meeting of the minds

7  on this issue.  If not, we can proceed in whichever way I think

8  is appropriate.  But I want to give you an opportunity to talk

9  about it to see if there can be an agreed-upon resolution, only

10  because I think that will make things more straightforward when

11  this gets presented to Judge Karas for sentencing.

12          But, again, if you're not able to resolve it, then

13  we'll go forward anyway.  It's just that we may find ourselves

14  with a problem down the line.

15          So I'm going to just adjourn for five minutes.  I'm

16  going to step off the bench, you can stay here and discuss, and

17  come back very shortly.

18          (A recess was taken.)

19          THE COURT:  Okay.  Let's go back on the record.

20          Mr. Felton, have you reached an agreement as to what

21  the allocution should include?

22          MR. FELTON:  Yes, your Honor.  The government

23  understands from the defendant that he will allocute to both

24  objects, which would be (b)(1)(B) methamphetamine as well as

25  (b)(1)(C) GBL.

1          THE COURT:  Okay.

2          Mr. Feldman, do you concur with that?

3          MR. FELDMAN:  Yeah.  The plea agreement, your Honor,

4     is staying exactly the same.  We're not modifying or changing

5     it.  But for purposes of his allocution, Mr. Cicero is going to

6     mention that he was also involved with distributing GBL.

7          THE COURT:  Okay.  Well, let's proceed.  Thank you

8     both.

9          Mr. Cicero, did you hear everything that Mr. Felton

10    described in his recitation of the elements of the offenses and

11    what the government would be prepared to prove at trial?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And at this time, how do you wish to

14    plead to the charge of the lesser included offense of

15    conspiring to distribute 50 grams and more of mixtures and

16    substances containing a detectable amount of methamphetamine,

17    its salts, isomers, and salts of its isomers, in violation of

18    Title 21 U.S. Code § 846 and 841(b)(1)(B)?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Okay.  Mr. Cicero, has anyone threatened

21    you or coerced you or pressured you improperly in order to get

22    you to plead guilty to this charge?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Has anyone made any promises to you other

25    than what is set forth in the plea agreement in order to induce

1   you to plead guilty?

2                THE DEFENDANT:  No, your Honor.

3                THE COURT:  Has anyone made any specific promises to

4   you about what the sentence of the Court will be?

5                THE DEFENDANT:  No, your Honor.

6                THE COURT:  Mr. Cicero, please tell me in your own

7   words what you did to commit the crimes.

8                THE DEFENDANT:  From in or about 2017 through in or

9   about February of 2020, I agreed with others to distribute GBL

10  and more than 50 grams of mixtures and substances containing

11  detectable amounts of methamphetamine.  I participated in the

12  conspiracy by allowing my contact information to be used to

13  send a Western Union payment to a supplier in Mexico to

14  purchase methamphetamine, by communicating with the supplier in

15  Mexico, and by renting hotel rooms where we held parties and

16  where crystal meth was distributed.  I was involved in this

17  activity in Westchester County and Manhattan.  At the time I

18  knew that what I was doing was wrong.  I sincerely apologize

19  for my criminal conduct.

20               THE COURT:  Okay.  Thank you, Mr. Cicero.

21               You mentioned that you engaged in this activity with

22  others.  So that was -- it was more than just you who -- was at

23  least one other person involved?

24               THE DEFENDANT:  Yes, your Honor.

25               THE COURT:  And did you enter into that agreement

1    with this one or more additional people knowingly and

2    voluntarily?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Okay.  Across the board with respect to

5    the conduct that you just described, did you commit these acts

6    knowingly and willfully?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  And did you know it was against the law

9    to do what you were doing?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  Okay.

12               Mr. Felton, is there anything else that the

13   government believes the Court needs to elicit from Mr. Cicero

14   before making the recommendation contemplated by Rule 11?

15               THE DEFENDANT:  No, your Honor.

16               THE COURT:  Thank you.

17               Mr. Feldman, do you believe there is anything else

18   the Court needs to elicit before I can make a Rule 11

19   recommendation?

20               MR. FELDMAN:  No, your Honor.

21               THE COURT:  Thank you.

22               All right.  Mr. Felton, do you know of any reason why

23   the Court should not recommend acceptance of Mr. Cicero's

24   guilty plea in this matter?

25               MR. FELTON:  No, your Honor.

1            THE COURT:  And Mr. Feldman, do you know of any

2    reason why the Court should not recommend acceptance of

3    Mr. Cicero's guilty plea?

4            MR. FELDMAN:  No, Your Honor.

5            THE COURT:  Mr. Cicero, in light of everything that's

6    been said here today, is it still your wish to plead guilty to

7    the charge of the lesser included offense contained in the

8    felony indictment?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  On the basis of your allocution,

11   Mr. Cicero, and your responses to my questions, I find that you

12   are fully competent and capable of entering an informed plea.

13   I'm satisfied that you understand your rights, including your

14   right to go to trial, that you are aware of the consequences of

15   your plea, and that includes the sentence that may be imposed.

16           Based on this plea allocution, I find that

17   Mr. Cicero's plea is knowing and voluntary and is supported by

18   an independent factual basis for each and every element of the

19   crime charged.  Accordingly, I respectfully report and

20   recommend to Judge Karas that the plea be accepted and that

21   Mr. Cicero be judged guilty of the offense, the lesser included

22   offense, charged in the felony indictment.

23           I also direct that a presentence investigation be

24   conducted by the United States Department of Probation and that

25   a presentence report be prepared.  Within 14 days from today,

1    so no later than October 27, 2021, Mr. Feldman, please contact

2    the Department of Probation to arrange for a presentence

3    interview.

4           Mr. Cicero, once that interview is scheduled with a

5    representative of the Department of Probation, you will have

6    this interview.  And I'm sure that Mr. Feldman will assist you

7    in connection with that interview if you wish.  You must be

8    fully honest and truthful during that interview, because if it

9    comes to the Court's attention that you have provided false,

10   incomplete, or misleading information, that may be held against

11   you at the time of sentencing.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right.  Mr. Felton, the prosecution

15   case summary for purposes of the presentence report is to be

16   delivered to the probation department no later than October 27.

17          MR. FELTON:  Yes, your Honor.

18          THE COURT:  And Ms. Grimaldi, if you'd please provide

19   a transcript of these proceedings within 30 days setting forth

20   my report and recommendation to Judge Karas.  And per our

21   standard practice in the courthouse, please send the transcript

22   to me first for review.

23          Ms. Brown, do we have a sentencing date from Judge

24   Karas yet?

25          THE DEPUTY CLERK:  We do.  It's February 10, 2022 at

1   10:00 a.m.

2           THE COURT:  All right.  This matter is adjourned for

3   sentencing.  The sentencing date is February 10, 2022 at 10:00

4   a.m.  If counsel have any issues with that date, please contact

5   Judge Karas's chambers to discuss that schedule.

6           Is there anything further that we should address

7   today from the government's perspective?

8           MR. FELTON:  No, your Honor.  Thank you.

9           THE COURT:  And anything further from the defendant's

10  perspective?

11          MR. FELDMAN:  No, your Honor.  Thank you.

12          THE COURT:  All right.  Thank you, Counsel.

13          Thank you, everyone.

14          Thank you, Mr. Cicero.

15          THE DEFENDANT:  Thank you, your Honor.

16          THE COURT:  We are adjourned.  Take care.  Stay safe

17  and stay healthy, everybody.

18

19

20  CERTIFICATE:  I hereby certify that the foregoing is a true and
    accurate transcript, to the best of my skill and ability, from
21  my stenographic notes of this proceeding.

22

23              Pamela L. Grimaldi, RPR, CRR, CLR
                Official Court Reporter, USDC, SDNY
24

25

                          PAMELA GRIMALDI, CRR, CLR
                                914.390.4053